Jamie Rucker (JR6767)
Nancy Slahetka (NS4140)
National Labor Relations Board
Region 2
26 Federal Plaza, Room 3614
New York, New York 10278-0104
(212) 264-0300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
CELESTE J. MATTINA, Regional Director,
Region 2, National Labor Relations Board,
for and on Behalf of the NATIONAL
LABOR RELATIONS BOARD,

                       Petitioner,

  -against-                                         08 Civ. 6550

KINGSBRIDGE HEIGHTS REHABILITATION          J. Cote
AND CARE CENTER

                       Respondent.              ECF Case
------------------------------------------------X

**REPLY BRIEF IN SUPPORT OF PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT**

**TABLE OF CONTENTS**

Reasonable Cause ...............................................1
Just and Proper ................................................6

**TABLE OF AUTHORITIES**

**Federal Cases**

*Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744 (9th Cir. 1988) ....7
*Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367 (11th Cir. 1992) ...7
*Associated Grocers of New England v. NLRB*, 562 F.2d 1333 (1st Cir. 1977) ..................................................9
*Blyer v. Domsey Trading Corp.*, 1991 WL 148513 (E.D.N.Y. 1991) (not reported in F.Supp.) ...................................8
*Blyer v. Pratt Towers*, 124 F.Supp.2d 136 (E.D.N.Y. 2000) ........7
*Columbia Portland Cement Co. v. NLRB*, 915 F.2d 253 (6th Cir. 1990) ..........................................................9
*D'Amico v. U.S. Service Industries*, 867 F.Supp. 1075 (D.D.C. 1994) ..........................................................8
*DeProspero v. House of the Good Samaritan*, 474 F.Supp. 552 (N.D.N.Y. 1978) ...............................................7
*Gottfried v. Frankel*, 818 F.2d 485 (6th Cir. 1987) ..............7
*Gottfried v. Mayco Plastics*, 472 F. Supp. 1167 (E.D. Mi. 1979), aff'd. mem. 615 F.2d 1360 (6th Cir. 1980) .....................7
*Henderson v. IUOE Local 701*, 420 F.2d 802 (9th Cir. 1969) .......8
*Hirsch v. Dorsey Trailers, Inc.*, 147 F.3d 243 (3d Cir. 1998) .6, 7
*Kaynard v. MMIC, Inc.*, 734 F.2d 950 (2d Cir. 1984) ..............6
*Longshoreman ILA v. NLRB*, 277 F.2d 681 (D.C.Cir. 1960) ..........3
*Madden v. Grain Elevator Workers, ILA, Local 418*, 334 F.2d 1014 (7th Cir. 1964), *cert. denied* 379 U.S. 967 (1965) .............9
*Methodist Hospital of Kentucky v. NLRB*, 619 F.2d 563 (6th Cir. 1980), *cert. denied*, 449 U.S. 889 (1980) ......................8
*Midwest Solvents, Inc. v. NLRB*, 696 F.2d 763 (10th Cir. 1982) ...8
*NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21 (1974) .................8
*NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585 (6th Cir. 1987) ...9
*NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240 (1939) .......8
*NLRB v. Heads & Threads Co.*, 724 F.2d 282 (2d Cir. 1983) ........5
*NLRB v. Wichita Television Corp.*, 279 F.2d 579 (10th Cir.), *cert. denied*, 364 U.S. 871 (1960) ......................................9
*NLRB v. Wooster Div. of Borg Warner Corp.*, 356 U.S. 342 (1958) ..3
*Oil Workers v. NLRB*, 405 F.2d 1111 (D.C. Cir. 1968) .............3
*Pascarell v. Vibra Screw Inc.*, 904 F.2d 874 (3d Cir. 1990) ......6
*Richmond Recording Corp. v. NLRB*, 836 F.2d 289 (7th Cir. 1987)...8
*Rivera-Vega v. ConAgra, Inc.*, 876 F.Supp. 1350 (D.P.R.), affd. 70 F.3d 153 (1st Cir. 1995) .......................................8
*Sharp v. Webco Indus., Inc.*, 225 F.3d 1130 (10th Cir. 2000) .....6

**Cases**

*Anheuser-Busch*, 351 NLRB No. 40 (2007), on remand from 414 F.3d 36 (D.C. Cir. 2005), prior decision 342 NLRB 560 (2004) .......9
*Beaird Industries*, 311 NLRB 768 (1993) .........................10
*D'Armigene, Inc.*, 148 NLRB 2 (1964), *enfd. in rel. part* 353 F.2d 406 (2d Cir. 1965) ............................................10
*Domsey Trading Corp.*, 310 NLRB 777 (1993), enfd. 16 F.3d 517 (2d Cir. 1994) ......................................................5
*General Telephone Co. of Michigan*, 251 NLRB 737 (1980), enforced mem. 673 F.2d 551 (D.C. Cir. 1982) .............................8

*KCET-TV*, 312 NLRB 15 (1993) ....................................... 3
*Plattdeutsche Park* Restaurant, 296 NLRB 133 (1989) ............... 3
*Ploof Transfer Co.*, 201 NLRB 828 (1973), enfd. mem. 485 F.2d 686
   (5th Cir. 1973) ................................................ 10
*Reichold Chemicals, Inc.* 288 NLRB 69 (1988) ...................... 5
*Taft Broadcasting Co.*, 274 NLRB 260 (1985) ....................... 3

**Reasonable Cause**

In its August 7 submissions, Respondent does not deny that it engaged in the following conduct: (i) failed to provide the Union with presumptively relevant requested information; (ii) ceased permitting Union Organizer Wray-Roach the access previously enjoyed and required under the terms of the expired contract; (iii) videotaped employees engaged in protected activity; (iv) bypassed the Union and offered employees "yellow-dog" contracts that unlawfully altered their terms and conditions of employment; (v) paid employees a bonus equal to the amount of dues deducted from their pay and remitted to the Union during the preceding year; and (vi) through Jozef Hubacek, told employees that if they went on strike they would not be reinstated. While Respondent notes that there are, in theory, potential defenses to some of these acts, its fails to offer the factual or legal bases necessary to sustain such defenses.[1] Consequently, there can be little doubt that Petitioner has demonstrated "reasonable cause to believe" that Respondent violated Section 8(a)(5) and (1) of

---

[1] Respondent observed that it is not an unfair labor practice to fail to respond to information requests made in bad faith, but adduced no evidence that the Union's information requests in this case were made in bad faith. Likewise, Respondent cited no case authority to suggest that its unilateral change in access for Organizer Wray-Roach was lawful. Respondent cited case law to the effect that an employer's recording of protected activity may be acceptable in certain instances, but provided no argument that its conduct fell within the ambit of any of those cases. Respondent correctly noted that it is not unlawful for an employer to cease deducting union dues from an employee's paychecks after the expiration of a collective bargaining agreement, but then incorrectly expanded that rule to conclude that it is unlawful for an employer to continue deducting dues, and altogether failed to address Respondent's grant to employees of a bonus. Respondent also failed to address its admitted bypassing of the Union by offering employees new

the Act by the first four instances of conduct, violated Section 8(a)(5), (3) and (1) of the Act by the fifth instance, and violated Section 8(a)(1) of the Act by the last.

In light of Respondent's repeated failures to claim that it made Benefit Fund payments after August 8, 2007, when such claims would have been fully expected,[2] Petitioner also has reasonable cause to believe that Respondent Kingsbridge unilaterally ceased making Benefit Fund contributions, in violation of Section 8(a)(5) and (1) of the Act.

Respondent seeks to defend against the allegation that its striking employees are unfair labor practice strikers by asserting that the employees are instead engaged in an unlawful strike. Respondent essentially contends that its employees were striking in furtherance of the Union's placement of an unlawful condition on bargaining, i.e., that a successor collective-bargaining agreement would not be negotiated until Respondent satisfied its debt to the Funds. Respondent's argument fails.

It is an unfair labor practice for a negotiating party to insist in certain ways upon a permissive subject of bargaining.

---

terms and conditions of employment and simply apologized for requiring employees to forego Union membership as a condition of employment.
[2] The evidentiary history in this regard was recounted by Hanan Kolko, Esq. during proceedings before this Court on August 7, 2008: (i) Benefit Fund employee Tony Petrella testified during the 2008 portion of the Region 29 proceeding that the last post-2005 contribution received by the Fund from Kingsbridge was in August 2007; (ii) no Respondent witness testified in rebuttal of that testimony; (iii) in the same proceeding, Kingsbridge counsel Joel Cohen admitted that Respondent had stopped making Benefit Fund contributions around that time, allegedly because it was in economic distress; (iv) Respondent raised no defense of payment in its post-hearing brief; and (v) Kingsbridge did not raise payment as a defense in the related ERISA action, 07 CV 9744.

2

For example, an employer or union may not refuse to execute an otherwise agreed-to contract because the parties lack agreement over a permissive subject. *Plattdeutsche Park* Restaurant, 296 NLRB 133, 137-138 (1989). Similarly, a party may not lawfully insist to impasse or condition agreement on a permissive subject of bargaining. *KCET-TV*, 312 NLRB 15 (1993); *NLRB v. Wooster Div. of Borg Warner Corp.*, 356 U.S. 342, 349 (1958). Consequently, a party may not exert economic pressure, i.e., engage in a strike or lockout, in support of its independently unlawful insistence to impasse upon a permissive subject or its conditioning further bargaining upon agreement regarding a permissive subject. *Pratt Towers, Inc.*, 339 NLRB 157, 171 (2003).

However, it is equally well established that a party "ha[s] a right to present, even repeatedly, a demand concerning a non-mandatory subject of bargaining, so long as it [does] not posit the matter as an ultimatum." *Longshoreman ILA v. NLRB*, 277 F.2d 681, 683 (D.C.Cir. 1960). *Accord*: *Taft Broadcasting Co.*, 274 NLRB 260, 261 (1985). Further, the fact that a party is engaged in a strike or a lockout does not mean that party has conditioned its willingness to enter into an agreement on acceptance of all of its proposals, including those relating to permissive subjects. *Oil Workers v. NLRB*, 405 F.2d 1111 (D.C. Cir. 1968). As noted by ALJ Fish, "There is certainly nothing unlawful, nor unreasonable, in the Union threatening a strike to force Respondent to comply with its [Fund] obligations." (Resp. Ans., Exh. E, p.22 (ALJD).)

3

The record in this proceeding is devoid of evidence that the Union in any way conditioned agreement on a successor contract upon Respondent's payment of its Fund debt. Respondent's effort to prove otherwise focuses almost exclusively on Pet. Exh. WW, an early February 2008 proposed "Settlement Agreement," under which the Union would accept Respondent's pending contract offer and Respondent would make past-due Fund contributions. But the Union's offer of a global settlement that would effectively resolve both the contract dispute and the Fund dispute demonstrates neither insistence to impasse over the delinquencies nor an unlawful precondition to a successor contract.

Union letters to Respondent shortly before and after it proposed the settlement agreement demonstrate that the Union did *not* insist upon Respondent's payment of its Fund debt as a precondition to a successor contract. In a January 23, 2008 letter to Respondent, the Union unambiguously offered to enter into a contract independent of Respondent's correction of its delinquencies when it wrote, "Irrespective of whether a collective bargaining agreement is entered into, the Union will pursue through all available means the collection of this indebtedness to the Funds…" (Pet., Exh. VV.) Similarly, a Union contract proposal forwarded to Respondent on March 6, 2008 contains no reference to the Fund delinquencies, and the accompanying cover letter notably conditions the end of the strike, but *not* the successor contract, on the Respondent's

4

arrangement to resolve the benefit fund dispute. (Pet., Exh. TT.) Hence, both a few weeks before and a few weeks after the strike began on February 20, 2008, the Union offered to execute a collective bargaining agreement without requiring Respondent to become current on its Fund contributions. That being so, the Union did not unlawfully insist that Respondent cure its delinquencies as a pre-condition of agreement and, *a fortiori*, the employees' strike did not support an unlawful insistence upon an arguably permissive subject of bargaining.

Finally, Petitioner's unrebutted evidence regarding the conduct of the strike vote establishes that employees authorized the strike in significant part because of Respondent's unilateral and unlawful failure to make Fund contributions. (Pet., Exh. T at ¶¶ 2-9.) Because the employees' strike vote was informed by and in response to this Respondent unfair labor practice, the subsequent strike was an unfair labor practice strike. *Reichold Chemicals, Inc.* 288 NLRB 69, 73 (1988) ("[T]he information on which the employees acted when they voted to strike is what is crucial in determining if there is a causal connection between the Respondent's insistence…and the determination to strike"); *NLRB v. Heads & Threads Co.*, 724 F.2d 282, 288 (2d Cir. 1983) (strike is unfair labor practice strike "when at least partly motivated" by employer ULPs); *Domsey Trading Corp.*, 310 NLRB 777, 791 (1993), enfd. 16 F.3d 517 (2d Cir. 1994) ("Board law is firmly established that a strike is an unfair labor practice

5

strike if the employer's unfair labor practice had anything to do with causing the strike").

## Just and Proper

Respondent asserts that some or all of the requested interim relief is unwarranted because (i) the Board delayed in filing its petition; (ii) the Union allegedly has "unclean hands"; (iii) some strikers are alleged to have engaged in misconduct; and (iv) the strikers have not yet made an unconditional offer to return to work. These claims are without legal support and are taken in turn.

**Delay.** The bulk of the Respondent's unfair labor practices occurred between August 2007 and April 2008; the complaint, a predicate to a Section 10(j) petition, issued on May 30, 2008; the petition was filed on July 23, 2008. The time taken to process the charges and to authorize filing of the Section 10(j) petition does not indicate undue delay. See *Hirsch v. Dorsey Trailers, Inc.*, 147 F.3d 243, 248-249 (3d Cir. 1998) (14 month delay insufficient to deny relief when otherwise warranted); *Pascarell v. Vibra Screw Inc.*, 904 F.2d 874, 881-882 (3d Cir. 1990). The Board needs a reasonable period of time to investigate, deliberate, and authorize the filing of a Section 10(j) action. *Sharp v. Webco Indus., Inc.*, 225 F.3d 1130, 1136 (10th Cir. 2000). See also *Kaynard v. MMIC, Inc.*, 734 F.2d 950, 954 (2d Cir. 1984).

More importantly, courts have recognized that delay is not in itself determinative of the propriety of injunctive relief and

6

is significant only if the harm the petition seeks to avert has already occurred and the status quo ante cannot be restored or a Board order in due course is likely to be as effective as interim relief. *Blyer v. Pratt Towers*, 124 F.Supp.2d 136, 147 (E.D.N.Y. 2000); *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992); *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988); *Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir. 1987). Interim relief remains appropriate here because, as set forth in Petitioner's Memorandum, the Court can restore the lawful status quo, protect statutory rights, and preserve the collective bargaining process, while a Board order in due course cannot. (Pet. Mem. at 54-62.)

In any event, courts should not punish employees because of displeasure with the Board's delay. *Hirsch v. Dorsey Trailers*, 147 F.3d at 249; *Gottfried v. Mayco Plastics*, 472 F. Supp. 1167, 1168 (E.D. Mi. 1979), aff'd. mem. 615 F.2d 1360 (6th Cir. 1980) and cases there cited. Section 10(j) proceedings are designed to protect employees' Section 7 rights and the public interest, which should not be impaired because the Board could have moved more quickly. *DeProspero v. House of the Good Samaritan*, 474 F.Supp. 552, 557 (N.D.N.Y. 1978).

**"Unclean Hands."** Courts, recognizing that Section 10(j) relief is designed to protect the statutory rights of employees and the public interest, have held that the alleged wrongdoing of a party which stands to benefit from an injunction under Section 10(j) of the Act does not render such an injunction improper.

7

*D'Amico v. U.S. Service Industries*, 867 F.Supp. 1075, 1087-1088 (D.D.C. 1994); *Henderson v. IUOE Local 701*, 420 F.2d 802, 808 (9th Cir. 1969); *Rivera-Vega v. ConAgra, Inc.*, 876 F.Supp. 1350, 1372 (D.P.R.), affd. 70 F.3d 153 (1st Cir. 1995); *Blyer v. Domsey Trading Corp.*, 1991 WL 148513 (E.D.N.Y. 1991) (not reported in F.Supp.).

**Picket Line Misconduct.** An employer cannot deny reinstatement to all strikers based on the unprotected misconduct of some unidentified participants. See *Methodist Hospital of Kentucky v. NLRB*, 619 F.2d 563, 566-567 (6th Cir. 1980), *cert. denied*, 449 U.S. 889 (1980). Further, while an employer may defend its refusal to reinstate a specific, individual former striker by showing that the individual engaged in strike misconduct so serious as to render him or her unfit for further service, *NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 252-255 (1939); *General Telephone Co. of Michigan*, 251 NLRB 737, 738 (1980), enforced mem. 673 F.2d 551 (D.C. Cir. 1982); *Richmond Recording Corp. v. NLRB*, 836 F.2d 289, 295 (7th Cir. 1987), the Board and courts have imposed strict limits upon an employer's right to discipline strikers for misconduct, *NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21, 23 (1974) ("protected activity acquires a precarious status if innocent employees can be discharged while engaging in it"). Thus, a refusal to reinstate a striker must be based on evidence that the individual personally engaged in the strike misconduct alleged, *Midwest Solvents, Inc. v. NLRB*, 696 F.2d 763, 765 (10th Cir. 1982); *NLRB v. Wichita Television Corp.*,

279 F.2d 579, 585 (10th Cir.), cert. denied, 364 U.S. 871 (1960), and only "serious misconduct during a strike justifies a refusal to reinstate after the strike is over," *Associated Grocers of New England v. NLRB*, 562 F.2d 1333, 1335 (1st Cir. 1977); *Columbia Portland Cement Co. v. NLRB*, 915 F.2d 253, 257 (6th Cir. 1990) (unlawful to deny unfair labor practice strikers reinstatement absent evidence "connecting the discharged employees to specific strike misconduct").

Respondent has largely failed to produce evidence connecting specific strikers to specific strike misconduct. Nonspecific assertions are insufficient to render inappropriate the requested interim reinstatement of 200 to 250 unfair labor practice strikers. The Employer must instead come forward with evidence linking particular employees to particular allegations of misconduct.[3] To the extent the Employer does come forward with such evidence, the Court may---and should---retain jurisdiction to determine whether specific strikers are ineligible for interim reinstatement.[4] Cf. *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987); *Madden v. Grain Elevator Workers, ILA, Local 418*, 334 F.2d 1014, 1020-1021 (7th Cir. 1964), cert. denied 379 U.S. 967 (1965).

---

[3] Petitioner has found no Board law to support a rule excluding evidence of strike misconduct gained in violation of the Act. *Anheuser-Busch*, 351 NLRB No. 40 (2007), on remand from 414 F.3d 36 (D.C. Cir. 2005), prior decision 342 NLRB 560 (2004)(reaffirming 2004 holding that Act prohibits Board from granting a make-whole remedy to employees disciplined or discharged for misconduct discovered through violation of Act by employer).

[4] These issues might be best handled by a Special Master.

9

**Ripeness.** In support of its claim that there exists "no support for…compelling Respondent to reinstate striking workers who have not requested to return to work," Respondent unsuccessfully seeks to distinguish the cases relied upon by Petitioner. (Resp. Brf. at 25.) In *D'Armigene, Inc.*, 148 NLRB 2 (1964), *enfd. in rel. part* 353 F.2d 406 (2d Cir. 1965), the Board specifically directed the employer to reinstate unfair labor practice strikers upon their unconditional offer to return to work, though the strikers had not yet offered to return. Respondent ignores Petitioner's citation of *Beaird Industries*, 311 NLRB 768, 770 (1993), wherein the Board stated, "In cases in which the Board finds that employees have engaged in an unfair labor practice strike, the Board's usual remedy requires the respondent employer to offer its striking employees reinstatement, on application,…even if there is no allegation regarding denial of reinstatement." See also *Ploof Transfer Co.*, 201 NLRB 828 (1973), *enfd. mem.* 485 F.2d 686 (5th Cir. 1973).

August 8, 2008

Jamie Rucker (JR6767)
Nancy Slahetka (NS4140)
Co-Counsel for Petitioner
NLRB, Region 2
26 Federal Plaza, Room 3614
New York, New York 10278-0104
(212) 264-0300

Ronald Meisburg, General Counsel
Barry J. Kearney, Associate General Counsel
Ellen A. Farrell, Deputy Associate General Counsel
Judith I. Katz, Assistant General Counsel
Karen P. Fernbach, Regional Attorney, Region 2
Donald B. Zavelo, Deputy Regional Attorney, Region 2